JOHN G. STEPHENSON, III v. UNITED STATES (No. 5173) *

United States Court of Customs and Patent Appeals,
December 10, 1964 **

*John G. Stephenson, III, pro se.*
*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, for the United States.

[Oral argument November 2, 1964, by Mr. Stephenson, III and Mr. Vance]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr.,
Associate Judges

SMITH, Judge, delivered the opinion of the court:

Appellant, a resident of the United States, while traveling abroad, purchased a fur jacket in Copenhagen, Denmark, on August 1, 1961. He and his wife returned to the United States on September 12, 1961, at which time the jacket was declared and entered. The jacket was imported by mail on October 20, 1961, and duty was assessed under paragraph 1519 (e) of the Tariff Act of 1930 (as modified by T.D. 51802), on the declared value less the returning resident's exemption in the amount then allowed by paragraph 1798 of the Act.

Paragraph 1798 (c) (2) (as amended by T.D. 53318) provides for certain exemptions to returning residents. At the time appellant purchased the fur jacket, the maximum allowable exemption for each person was $500. However, on August 10, 1961, Congress enacted P.L. 87–132 (75 Stat. 335), which became effective September 9,

---

*C.A.D. 850.
**Petition for rehearing denied February 4, 1965.

1961 (three days prior to appellant's return to the United States) and reduced the applicable exemption to $100.

The collector ruled that appellant and his wife, as residents returning to the United States on or after September 9, 1961, were each entitled to a $100 exemption under P.L. 87–132, rather than the $500 exemption for each of them which was in effect at the time the jacket was purchased. Appellant filed a timely protest, claiming that the jacket was entitled to entry under paragraph 1798(c) (2) without duty because of the total $1,000 exemption which was there provided prior to the amendment. His protest was overruled by the United States Customs Court, Third Division (C.D. 2425). This appeal followed.

It is appellant's position that when he purchased the jacket on August 1, 1961, a right to import it under the provisions of paragraph 1798(c) (2), *as then in force*, became vested, and that this right to the larger exemption was unaffected by the subsequent amendment of the paragraph by P.L. 87–132. In support thereof, he cites section 651 of the Tariff Act of 1930 (19 U.S.C.A. 1651), which provides that "The repeal of existing laws or modifications or reenactments thereof embraced in this chapter shall not affect any act done, or any right accruing or accrued * * * prior to such repeal, modifications, or reenactments * * *."

Appellant asserts his right to the larger exemption as a matter of law, and states in his brief that three issues are presented for our determination, as follows:

I. Whether the Act of August 10, 1961 (75 Stat. 325) reduced the exemption as to goods acquired prior to the date of enactment.

II. Whether the Act of August 10, 1961, is constitutional under the Fifth Amendment if it did reduce the exemption with respect to articles acquired abroad prior to the date of enactment.

III. Whether the question of constitutionality can be raised in this court.

It seems to us, however, that decision of the present appeal turns on the single issue of whether duty assessments (and exemptions therefrom) are to be determined as of the date of entry of the dutiable goods into the United States. Appellant's position is that his "right" to the larger exemption vested on the date of his purchase of the coat; the government's position is that no such "right" vested in appellant as of the *purchase* date; rather, the right of appellant to make the importation and the duties applicable thereto must be determined as of the *entry* date.

In this regard, the Customs Court stated:

As we read paragraph 1798(c) (2), *supra*, the date of arrival in this country of the returning resident fixes his right to exemptions under its provisions. All of the duty exemption provisions contained in paragraph 1798(c) (2), *supra*, are prefaced by the statement *In the case of any person arriving in the United States who is a returning resident thereof*. This language, it seems to us, is a clear expression of the legislative intent to fix the act of arrival of the resident as the

event which determines the duty exempt status of his merchandise. In the case at bar, that status was determined on September 12, 1961, the date of plaintiff's arrival in the United States. At that time paragraph 1798(c)(2), *supra*, as amended by Public Law 87–132, was in effect and governed the exemptions to which plaintiff was entitled. The collector allowed the reduced exemption provided for in that statute in the assessment of duties against the involved entry, and we hold that the collector's action in this regard was proper. * * *

 We are in full agreement. It is a long-established principle of customs law that rights of the type here asserted by appellant are to be determined at the time of entry and not prior thereto. In *United States* v. *Vowell*, 9 U.S. (5 Cranch) 368 (1809), the issue was whether salt which had arrived within the *collection district* of Alexandria prior to the time duty thereon had ceased, but which did not arrive in *port* until after the date providing for free entry, was subject to duty. The Court held that duties do not accrue until a vessel arrives at the port of entry. Since the plaintiff's rights were fixed at that time, he was entitled to free entry of the salt. Cf. *Koeller-Struss Co.* v. *United States*, 46 CCPA 83, C.A.D. 702.

*Bragg* v. *United States*, 2 Ct. Cust. App. 22, T.D. 31575, involved certain livestock exported from the United States while a provision of the tariff act of 1897 allowing free re-entry was in effect. Subsequently, the tariff act of 1909 repealed that provision but the importer claimed that he was still entitled to duty-free re-entry. As in the appeal at bar, the appellant there claimed, *inter alia*, that certain rights had vested prior to the passage of the 1909 act. In overruling the claim the court said (at 23):

· As to the first point, it is sufficient to say that tariff laws create no *vested rights* to import free or at any particular rate of duty goods, wares, merchandise, or products of any kind. While such laws are in force a right to import, as therein provided, may be said to exist; but its continued enjoyment is dependent on the continuance of the law which gave it, and therefore it can not be considered as vested in the sense that it has become property of which the owner can not be deprived without due process of law. The citizen has no *vested* rights in statutory exemptions from taxation, and such exemptions are always subject to recall when they have been extended as a privilege and not granted for a consideration received by the public. (Cooley's Const. Lim., 546, 547; Cooley on Taxation, 111.) The taxing power of the Government is limited only by the Constitution, and in the exercise of that power that which is exempt from tax or duty today may be made taxable or dutiable tomorrow if Congress so wills it. * * *

Thus, since neither the purchase of the jacket nor any other act done by appellant subsequent thereto caused the asserted right to vest in appellant prior to the effective date of P.L. 87–132, section 651 is of no avail to appellant. Moreover, we agree with the Customs Court that

* * * even if the duty exemption contended for by plaintiff were considered to be a matter of right in the sense that even a privilege may not be arbitrarily withdrawn or curtailed, the savings clause in Section 1651(c), *supra*, would

not be available to plaintiff to preserve such right from suspension. Section 1651(c), *supra*, relates solely to laws in existence at and prior to the passage of the Tariff Act of 1930 which are in some way affected by the act of 1930. Section 1651(c), *supra*, does not operate upon amendments made within the Tariff Act of 1930 itself, of which section 1651(c) *supra*, is a part. Such a construction of this savings clause would render it virtually impossible for Congress to effectively provide for modification of provisions of the act of 1930 as and when it deemed such modification expedient or necessary, as in the cutoff dates on quota merchandise, for example.

Appellant's entire argument with regard to the constitutional issue which he raises is predicated upon his asserted acquisition of a vested right predating the effective date of P.L. 87–132, i.e., a vested right to import the jacket with duties to be assessed as provided in the law in effect at the *time of purchase*. Since we agree with the Customs Court that such "right" does not vest until the date of entry, we need not reach the question raised by appellant as to the constitutionality of P.L. 87–132. Under existing law, the operation of the amendment was prospective and not retrospective.

The judgment of the Customs Court is *affirmed*.